**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW HALL, | ) |
| on behalf of Plaintiff and the class members | ) |
| described below, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ASCEND LOANS, LLC; | ) |
| UPROVA HOLDINGS LLC; | ) |
| UPPER LAKE PROCESSING SERVICES, INC.; | ) |
| POMO ONE MARKETING INC.; | ) |
| HABEMCO LLC; | ) |
| GENEL ILYASOVA; | ) |
| MICHAEL SCOTT HAMMER; | ) |
| DENISE DEHAEMERS; | ) |
| SARAH MARIE HIMMLER; | ) |
| DAVID STOVER; | ) |
| and JOHN DOES 1-20, | ) |
| | ) |
| Defendants. | ) |

## <u>COMPLAINT – CLASS ACTION</u>

1.      Plaintiff, Matthew Hall, brings this action to secure redress from predatory and unlawful loans (such as <u>Exhibit A</u>). The loans are made through a website, <u>www.ascendloans.com,</u> nominally operated by Defendant Ascend Loans, LLC. Defendants Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are entities responsible for the operation of the website and the making and collection of the loans. Individuals involved in the actual operation of the lending activities include Genel Ilyasova, Michael Scott Hammer, Sarah Marie Himmler, David Stover and Denise DeHaemers. Other parties involved in making the loans are named as John Does 1-20.

2.      Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1

*et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts IV-V).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d).

4. This Court has personal jurisdiction over Defendants because they:

    a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

    b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury

Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7.     Plaintiff Matthew Hall is a resident of the Northern District of Illinois.

### Defendants

8.     Defendant Ascend Loans, LLC is an online lender that offers loans to consumers at annual percentage rates in excess of 600% via the website www.ascendloans.com. Ascend Loans, LLC purports to be "a tribal lending entity wholly owned and operated by the Habematolel Pomo of Upper Lake, California" (the "Tribe"). It uses the address 635 E. State Highway 20, U, Upper Lake, CA 95485-8705.

9.     Defendant Uprova Holdings LLC is a limited liability company, chartered by the Habematolel Pomo of Upper Lake, California, that uses the addresses (a) 635 E. State Highway 20, U, Upper Lake, CA 95485-8705 and (b) 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. Actual business operations are conducted at the Overland Park address. It provides services to Ascend Loans, LLC necessary for it to conduct an internet lending business, such as marketing.

10.     Defendant Upper Lake Processing Services, Inc. is a corporation chartered by the Habematolel Pomo of Upper Lake, California. It provides support and processing services to Ascend Loans, LLC and other online lenders, necessary for them to conduct internet lending businesses. The services performed for the lenders include customer verification, customer service, call center operations, and collections services. Many of these services, such as collections services and customer service, are performed as agent of the lender. Defendant Upper Lake Processing Services, Inc., uses the address 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365.

3

11.     Defendant Pomo One Marketing Inc. is a corporation chartered by the Habematolel Pomo of Upper Lake, California. It provides lead generation for www.ascendloans.com. It uses the address 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. It sometimes does business as "Arrowshade."

12.     Defendant Habemco LLC is a limited liability company chartered by the Habematolel Pomo of Upper Lake, California. It uses the addresses (a) 7201 W. 110th St., Fl. 2, Overland Park, KS 66210-2373, (b) 11605 Haynes Bridge Rd., Alpharetta, GA 30009-8669, and (c) 635 E. State Highway 20, Upper Lake, CA 95485-8793. Its registered agent is Michael W. Pearson, 3600 American River Drive, Suite 135, Sacramento, CA 95864. Habemco LLC is also involved in the operation of the www.ascendloans.com lending enterprise.

13.     Defendant Genel Ilyasova is Vice President of Partner Relations for Pomo One Marketing. On information and belief, the "partners" are the lenders such as Ascend Loans. Her activities are necessary for Ascend Loans, LLC to engage in an internet lending business. On information and belief, she is not a member of the Tribe. She may be found at 3498 Troy Drive, Los Angeles, California 90068.

14.     Defendant Sarah Marie Himmler is a managing agent of Uprova Holdings LLC. On information and belief, she is responsible for the content of the www.ascendloans.com website. She also prepares content for the Pomo One Marketing website. She holds the title of Manager, Digital Content & Front End Developer. Her activities are conducted on behalf of Ascend Loans, LLC, and are necessary for it to engage in an internet lending business. On information and belief, she is not a member of the Tribe. She may be found at 7 Georgetown Dr., Apt. 10, Framingham, MA 01702-7538.

15.     Defendant Michael Scott Hammer is an attorney and chief compliance officer at Habemco LLC. He also works for Upper Lake Processing Services Inc. On information and belief, he is responsible for determining where loans made through the www.ascendloans.com website are made. Mr. Hammer may be found at 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365.

4

On information and belief, he is not a member of the Tribe.

16.     Defendant Denise DeHaemers is Legal Department Operations Manager at Habemco LLC. She may be found at 7201 W. 110th St., Overland Park, KS 66210-2373. Her activities are conducted on behalf of Ascend Loans, LLC, and are necessary for it to engage in an internet lending business. On information and belief, she is not a member of the Tribe.

17.     Defendant David Stover is vice president in charge of Call Center Operations for Upper Lake Processing Services, Inc. He has been employed by Upper Lake Processing Services, Inc., since about 2013. He may be found at 7201 W. 110th St., Ste. 210, Overland Park, KS 66210-2365. On information and belief, his responsibilities include customer verification, customer service, and collections services. His activities are conducted on behalf of Ascend Loans, LLC, and are necessary for it to engage in an internet lending business. On information and belief, he is not a member of the Tribe.

18.     Defendants Genel Ilyasova, Michael Scott Hammer, Sarah Marie Himmler, David Stover and Denise DeHaemers are hereinafter referred to as the "individual Defendants."

19.     Defendants John Does 1-20 are other entities and individuals involved in the lending activities complained of.

20.     The Tribe has fewer than 200 members.

21.     Most of the persons who are operating the lending operation conducted via www.ascendloans.com are not members of the Tribe.

22.     The companies and individuals responsible for the business conducted through www.ascendloans.com do business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

23.     At no time have any of the Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

24.     Defendants nevertheless advertise and make loans to Illinois residents at rates

5

greatly exceeding 9%.

25. Defendants sought out Illinois residents for such loans.

**FACTS RELATING TO PLAINTIFF MATTHEW HALL**

26. On or about October 6, 2022, Plaintiff Matthew Hall obtained a loan via www.ascendloans.com (Exhibit A). The loan had an amount financed of $400 and an annual percentage rate of 699.9936%.

27. Plaintiff made payments on the loan, including interest.

28. Defendants claim that amounts are still outstanding.

29. Exhibit A is written on a standard form loan agreement used by Defendants on a regular basis.

30. Defendants regularly make loans to individuals in Illinois at such rates.

31. Defendants will not make loans in certain states. Illinois is not one of these states. Defendants thus seek business from Illinois consumers.

32. The loan was obtained for personal, family or household purposes and not for business purposes.

33. The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

34. The loan was made entirely via Internet.

35. The loan was to be repaid via ACH.

36. Ascend Loans, LLC's lending does not actually occur on the Tribe's reservation.

37. A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

38. The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California

6

constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

39.     Plaintiff has never set foot on the Tribe's land in California.

40.     Loans to Illinois residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Illinois.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

41.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

42.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

43.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

44.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null

and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

45.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

46.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

47.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781,  2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

48.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of  Red Leaf Ventures, LLC,* No. 12 CC 569, *In the Matter of  Money Mutual, LLC*, No. 12 CC 408; *In the Matter of  Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

## <u>INVALIDITY OF CLAIM OF TRIBAL IMMUNITY</u>

49.     In an attempt to evade prosecution under usury laws of states like Illinois, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled

to the sovereign immunity of Native American tribes.

50.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

51.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

52.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

53.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

54.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

55.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in

the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

56.     Plaintiff incorporates paragraphs 1-55.

57.     This claim is against all Defendants.

58.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

59.     Declaratory relief will resolve such controversy.

60.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

61.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

62.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Ascend Loans, LLC at more than 9% interest (c) which loan has not been paid in full.

63.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

64.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

65.     There are questions of law and fact common to the class members, which common

10

questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

66.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

67.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

68.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

69.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.  Injunctive relief;

    ii.  Declaratory relief;

    iii.  Restitution of all amounts collected on the loans from members of the class;

    iv.  Costs of suit; and

    v.  Such other and further relief as the Court deems proper.

### COUNT II – ILLINOIS INTEREST ACT

70.     Plaintiff incorporates paragraphs 1-55.

71.     This claim is against all Defendants.

72.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

73.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS

11

205/6.

## CLASS ALLEGATIONS

74.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

75.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Ascend Loans, LLC at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

76.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

77.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

78.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

79.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

80.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

81.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.      Damages as provided in 815 ILCS 205/6.

ii.        Attorney's fees, litigation expenses and costs of suit; and

iii.       Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

82. Plaintiff incorporates paragraphs 1-55.

83. This claim is against all Defendants.

84. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

85. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

86. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

87. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Ascend Loans, LLC at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

88. Plaintiff may alter the class definition to conform to developments in the case and discovery.

89. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

90. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

91. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained

13

counsel experienced in class actions and consumer credit litigation.

92.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

93.     A class action is superior for the fair and efficient adjudication of this matter, in that:

   a.     Individual actions are not economically feasible.

   b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i.      Compensatory damages;

   ii.     Punitive damages;

   iii.    Attorney's fees, litigation expenses and costs of suit; and

   iv.     Such other and further relief as the Court deems proper.

## COUNT IV – RICO

94.     Plaintiff incorporates paragraphs 1-55.

95.     This claim is against the individual Defendants, who are the RICO "persons."

96.     All loans made in the name of Ascend Loans, LLC, to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

97.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

98.     Ascend Loans, LLC is an enterprise affecting interstate commerce, in that it is a legal entity located outside of Illinois and makes loans to Illinois residents via the Internet.

99.     Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are also enterprises affecting interstate commerce, in that each is a legal entity located outside of Illinois and is responsible for making loans to Illinois residents via the Internet.

100.    Each of the individual Defendants is associated with each of the enterprises listed

14

above.

101.     The individual Defendants conducted or participated in the conduct of the affairs of each enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

102.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

103.     Plaintiff brings this claim on behalf of a class.

104.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Ascend Loans, LLC at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

105.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

106.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

107.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

   b.     Whether Ascend Loans, LLC, is an "enterprise."

   c.     Whether Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC are each enterprises;

   d.     Whether each individual Defendant is associated with one or more of the enterprises listed above.

   e.     Whether each individual Defendant conducted or participated in the affairs of such enterprises through a pattern of making and collecting unlawful

loans.

108.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

109.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

110.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against the individual Defendants for:

    i.    Treble damages;

    ii.    Attorney's fees, litigation expenses and costs of suit; and

    iii.    Such other or further relief as the Court deems proper.

## COUNT V – RICO

111.    Plaintiff incorporates paragraphs 1-55.

112.    This claim is against the individual Defendants, who are the RICO "persons."

113.    All loans made in the name of Ascend Loans, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

114.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

115.    There exists an association in fact enterprise consisting of Ascend Loans, LLC, Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC. These business of the enterprise is to make loans to Illinois residents and others via the Internet. Each of the entities that is part of enterprise is located outside of Illinois.

116.    Each of the individual Defendants is associated with the enterprise.

16

117. The individual Defendants conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

118. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

119. Plaintiff brings this claim on behalf of a class.

120. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Ascend Loans, LLC, at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

121. Plaintiff may alter the class definition to conform to developments in the case and discovery.

122. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

123. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.     Whether there exists an association in fact enterprise consisting of Ascend Loans, LLC, Upper Lake Processing Services, Inc., Pomo One Marketing Inc., and Habemco LLC.

    c.     Whether each individual Defendant is associated with the enterprise.

    d.     Whether each individual Defendant conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

124. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

17

125. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

126. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against the individual Defendants for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other or further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Dulijaza (Julie) Clark (ARDC 6273353)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman